IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEODORE RIDGEWAY,<br>       Plaintiff,<br><br>  vs.<br><br>MR. GUYTON, *Unit Manager*;<br>CORRECTION OFFICER HENDERSON;<br>MR. FOLIO, *Superintendent*; TRACY<br>SHAWLEY, *Grievance Officer*; DORINA<br>VARNER, *Chief Grievance Officer*,<br>       Defendants. | Civil Action No. 13-1254<br>Chief Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 22 |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff Theodore Ridgeway ("Plaintiff") is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional Institution ("SCI") at Albion. Plaintiff brings this civil rights action against Unit Manager, Mr. Guyton ("Guyton"), Correctional Officer Henderson ("Henderson"), Superintendent Folino ("Folino"), Tracey Shawley, Grievance Coordinator ("Shawley"), and Dorina Varner, Chief Grievance Office ("Varner") (collectively, "Defendants"), alleging that Defendants violated his rights provided by the Eighth and Fourteenth Amendments to the United States Constitution relative to the conditions of his confinement while he was incarcerated at SCI Greene.

Presently before the Court is a Motion to Dismiss Amended Complaint submitted by Defendants. ECF No. 22. For the reasons that follow, the Motion will be granted.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

According to the Amended Complaint, from mid-October until November 18, 2011, while Plaintiff was housed on B-block, A-pod, Cell 15 at SCI Greene, his toilet was broken and "would overflow" with fecal matter, urine and a black substance. ECF No. 15, p. 3, ¶¶ 1, 2. Plaintiff contends that he complained to Defendant Henderson about his toilet and was told by Henderson that he would submit a work order. Plaintiff complains, however, that the only work order placed by Henderson was for the floor drain on the unit and not Plaintiff's toilet. Id. at pp. 3-4, ¶¶ 3, 12, 17. Plaintiff alleges that he also informed Defendant Guyton of the problem with his toilet sometime after November 10, 2011, but that no action was taken. Id. at p. 3, ¶ 4. Ultimately, on November 18, 2011, Plaintiff claims that his toilet overflowed and flooded his cell with feces and urine water. Id. at ¶ 6. Plaintiff notified the corrections officers on duty at the time and was provided with a mop to clean his cell. Id. at ¶¶ 6, 7. According to Plaintiff, however, as a result of the flood some of his personal and legal property was destroyed. Id. at ¶ 8. Plaintiff complains that it was not until after he filed a grievance ("the Grievance") on November 26, 2011, regarding his lost property that the issue with his toilet was addressed. Id. at pp. 3-4, ¶¶ 9, 13.

Plaintiff initiated this action on August 29, 2013, by filing a Motion for Leave to Proceed *in forma pauperis*, along with a copy of his Complaint. ECF No. 1. The Motion for Leave to Proceed *in forma pauperis* was granted by the Court on September 19, 2013, ECF No. 2, and the Complaint was filed on that same date. ECF No. 3. On November 7, 2013, Plaintiff filed a Motion for Leave to File an Amended Complaint, ECF No. 14, which was granted by the Court on November 18, 2013. ECF: 11/18/2013 Text Order. In the Amended Complaint, ECF No. 15, which was filed on the same day and remains the operative complaint, Plaintiff brings a claim

under the Eighth Amendment to the Constitution alleging that the cell conditions to which he was exposed violated his right against cruel and unusual punishment.  Plaintiff also appears to bring a claim under the Due Process clause of the Fourteenth Amendment relative to the personal and legal property that was allegedly destroyed as a result of the flood in his cell on November 18, 2011.

Defendants filed a Motion to Dismiss Amended Complaint on June 6, 2014, ECF No. 22, to which Plaintiff responded on July 14, 2014.  ECF Nos. 25, 26.  As such, Defendants' Motion to Dismiss is ripe for review.

## II.     STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See California Publ. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## III. DISCUSSION

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423. As previously discussed, Plaintiff in this case alleges that Defendants deprived him of his right against cruel and unusual punishment provided by the Eighth Amendment to the Constitution and his right to due process provided by the Fourteenth Amendment.

4

A.      **Fourteenth Amendment Due Process Claims**

Defendants argue that Plaintiff's due process claims based on the loss of, or damage to, his personal and legal property should be dismissed because the DOC provides an adequate post-deprivation remedy to Plaintiff and other inmates who claim to have suffered a deprivation of property.

Indeed, it is well established that the unauthorized intentional deprivation of property by a prison official, as has been alleged here, does not violate the Due Process Clause of the Fourteenth Amendment where the inmate has a meaningful post-deprivation remedy available to him. Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008), *quoting* Hudson v. Palmer, 468 U.S. 517, 533 (1984). Thus, in order to succeed on a due process claim, an inmate must not only show that he was deprived of his property but he must also show that he was not afforded a post-deprivation administrative remedy. Ball v. Campbell, 2011 WL 7080692, at *7 (M.D. Pa. Dec 9, 2011), *R&R adopted as the Opinion of the Court in* 2012 WL 201846 (M.D. Pa. Jan. 23, 2012). The United States Court of Appeals for the Third Circuit has found that adequate post-deprivation remedies include not only the ability to file a state tort action but the use of the prison's grievance process. Tapp v. Proto, 404 F. App'x 563, 567 (3d Cir. 2010); Tillman v. Lebanon Cnty. Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000). The existence of either of these post-deprivation remedies therefore "forecloses any due process claim . . . even if [the] inmate is dissatisfied with the result of the process." Iseley v. Horn, 1996 WL 510090, at * 6 (E.D. Pa. Sept. 3, 1996), *citing* Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995). See Pettaway v. SCI Albion, 2012 WL 366782, at *3-4 (W.D. Pa. Feb. 2, 2012).

Here, not only did Plaintiff have the DOC's grievance process available to him but Plaintiff concedes that he took advantage of that process relative to his damaged and/or lost

property. ECF No. 15, ¶¶ 9-28; ECF No. 3-1, pp. 10-24. Although Plaintiff is clearly unhappy with the result of the grievance process, it does not negate the fact that the DOC's grievance system has been deemed an adequate post-deprivation remedy by the United States Court of Appeals for the Third Circuit and that Plaintiff's due process claims, therefore, are foreclosed.[1] Accordingly, Plaintiff Fourteenth Amendment due process claims are properly dismissed.

### B. Claims Against Defendants Folino, Shawley and Varner

Defendants also argue that the claims brought against Defendants Folino, Shawley and Varner should be dismissed because Plaintiff has failed to allege sufficient facts in the Amended Complaint to show that they had any personal involvement in the alleged constitutional violations.

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), *quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). See Ruff v. Health Care Adm'r, 441 F. App'x 843, 846 (3d Cir. 2011) (*per curiam*) ("[t]o be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct"). See also Kaucher v. County of Bucks, 455 F.3d 418, 432 n.7 (3d Cir. 2006), *quoting* Estate of Smith v. Marasco, 430

---

[1] Moreover, to the extent that Plaintiff argues that the Grievance was handled improperly and thus was not an adequate or meaningful remedy under the due process analysis, the United States Court of Appeals for the Third Circuit has rejected due process claims relating to prison grievance procedures finding that "[p]risoners do not have a constitutional right to prison grievance procedures. . . [n]or do they have a liberty interest protected by the due process clause in the grievance procedures." Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013). See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

F.3d 140, 151 (3d Cir. 2005) ("[i]n order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights").

It is also well established that participation in the grievance process is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct. Rode v. Dellarciprete, 845 F.2d at 1207. See Ramos v. Pennsylvania Dep't of Corr., 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) ("review and denial of the grievances and subsequent administrative appeal conducted does not establish personal involvement by those Defendants in the alleged underlying unconstitutional conduct"); Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (allegations that the defendants denied the plaintiff's appeal of his grievance was insufficient to establish the defendant's personal involvement in the challenged conduct); Watkins v. Horn, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement).

In the instant case, review of the Amended Complaint shows that Plaintiff's claims brought against Defendants Folino, Shawley and Varner are based solely on their involvement in reviewing and denying Plaintiff's Grievance regarding the conditions of his confinement. ECF No. 15, ¶¶ 18-22. Because participation in the grievance process, even where errors are allegedly made, is insufficient to establish personal involvement in the alleged unlawful conduct, Plaintiff has failed to state a claim against Folino, Shawley or Varner and the claims brought against them will be dismissed.[2] See Ramos v. Pennsylvania Dep't of Corr., 2006 WL 2129148, at *3.

---

[2] As argued by Defendants, to the extent that Plaintiff has brought claims against Defendant Guyton based on his role in reviewing Plaintiff's grievance, those claims are properly dismissed as well.

7

## C. Eighth Amendment Cruel and Unusual Punishment Claims

As the United States District Court for the District of New Jersey has succinctly stated:

> The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement. The Constitution, however, "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 ... (1981), and prison officials must merely ensure that inmates receive adequate food, clothing, shelter and medical care, plus must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 ... (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526–27 ... (1984)). To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 ... (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation," *Helling*, 509 U.S. at 32 (*quoting Rhodes v. Chapman*, 452 U.S. 337, 346 ... (1981)), hence requiring that the deprivation sustained by a prisoner be an "extreme deprivation." *Hudson v. McMillian*, 503 U.S. 1, 9 ... (1992). The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm ensuing from that extreme deprivation. *See Farmer*, 511 U.S. at 835; *Wilson*, 501 U.S. at 303.

Brown v. Sadowski, 2009 WL 2182604, at *4 (D.N.J. July 20, 2009). See Banks v. Niclkin, 2011 WL 397651, at *7 n.4 (M.D. Pa. Feb. 2, 2011), *citing* McKeithan v. Beard, 322 F. App'x 194, 202 (3d Cir. 2009) ("Eighth Amendment violations typically require the presence of intolerable conditions . . ."). Moreover, "[i]n reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged constitutional conditions and the 'totality of the circumstances' as critical to a finding of cruel and inhumane treatment." Milhouse v. Gee, 2011 WL 3627414, at *11 (Aug, 17, 2011), *quoting* Rhodes v. Chapman, 452 U.S. at 362-63.

Here, Plaintiff generally alleges in the Amended Complaint that, from the last two weeks in October 2011 until November 18, 2011, the toilet in his cell was broken and would overflow with fecal matter, urine and a black substance in the water, that he continuously complained to

8

Defendant Henderson about the problem and was told by Henderson that he would submit a work order to have the toilet fixed. ECF No. 15, p. 3, ¶¶ 2, 3. Plaintiff also alleges that he informed Correctional Officer Walko, who is not a defendant in this action, of "the problem" on November 10, 2011, and when nothing was done, he spoke to Defendant Guyton about "the problem" to no avail. Id. at ¶ 4. Although Plaintiff acknowledges that Defendant Henderson submitted a work order on November 15, 2011, he complains that the work order was for the floor drain in the unit from which black water was emanating and not Plaintiff's toilet. Id. at p. 4, ¶ 12.[3]

Plaintiff identifies only one specific incident that his toilet overflowed in the Amended Complaint which apparently occurred on November 18, 2011. Plaintiff asserts that he was awakened at approximately 3:10 a.m. when his toilet overflowed "with fecal matter and urine mixed water," and that it completely flooded his cell. Id. at p. 3, ¶ 5. Plaintiff alleges that he notified the officers on duty and that Corrections Officer Morris provided him with a mop for the night. Id. at ¶¶ 6, 7. Plaintiff contends that, as a result of the flooding, his personal property, including three legal briefs, pictures of his deceased father and other family members, letters, and some commissary items were destroyed. Id. at ¶ 8. Plaintiff further complains that the problem with his toilet was not addressed until after he filed the Grievance on November 26, 2011. Id. at pp. 3, 4, ¶¶ 9, 17.

The Court finds that these allegations are insufficient to state a claim for cruel and unusual punishment. First, although not dispositive of the issue, Plaintiff initially asserts in the Amended Complaint that his toilet was broken for approximately four weeks but alleges

---

[3] It should be noted here that in the Initial Review Response to the Grievance that Plaintiff ultimately filed on November 26, 2011, it is indicated that "[t]he Plumbing Crew was on the Unit on November 18, 2011 when the drains backed up causing your toilet overflowed [sic], also, on November 21, 2011, when the work order was retired." ECF No. 3, p. 12. It therefore appears that Plaintiff's toilet was overflowing due to the floor drains on the unit backing up.

elsewhere that it was only broken for "several weeks." ECF No. 15, ¶¶ 2, 3, 12. Further, in his brief filed in opposition to the instant Motion to Dismiss, Plaintiff states that he was exposed to the cited conditions for just "over fourteen days," which is a significantly less period of time. ECF No. 26, pp. 9, 11.

Second, Plaintiff alleges only that his toilet "would overflow." Plaintiff, however, has not provided any facts regarding how often the toilet would overflow, how much it would overflow, or how long he was exposed to the overflow. Indeed, in his brief presently before the Court, Plaintiff states that the overflow occurred only at "different periods." ECF No. 26, p. 9. The United States Court of Appeals for the Third Circuit has found, however, that confinement in a cell for up to thirty days with a toilet that "often" backs up is insufficient to state an Eighth Amendment claim. Burkholder v. Newton, 116 F. App'x 358, 363 (3d Cir. 2004). Furthermore, as the Court in Burkholder noted:

> Courts have found that the Eighth Amendment is not violated in much more harsh conditions. *See Peterkin v. Jeffes*, 855 F.2d 1021, 1026–28 (3d Cir.1988) (holding that being made to sleep on dirty mattress on floor did not make out an Eighth Amendment claim); *Blizzard v. Watson*, 892 F.Supp. 587, 591, 598 (D.Del.1995) (dismissing an Eighth Amendment claim where plaintiff claimed he was awakened "by urine splashing on his leg from a prisoner using the toilet near his bed"); *Wilson v. Schomig*, 863 F.Supp. 789, 794–95 (N.D.Ill.1994) (ruling that without a showing of physical harm, claim that inmate was forced to sleep on urine and feces-stained mattress in dirty, roach-infested, leaky cell was not enough to make out an Eighth Amendment claim).

Id. See Dumas v. Pennsylvania Dep't of Corr., 2007 WL 1276908 (W.D. Pa. Apr. 30, 2007) (concluding no constitutional violation where plaintiff alleges he was in filthy conditions for only three weeks).

Third, although Plaintiff has stated in the Amended Complaint that he was exposed to "unfit, dangerous, and unhealthy conditions," ECF No. 15, ¶¶ 9, 15, he does not allege that he

suffered any ill effects from the toilet overflowing. Indeed, the only injury of which Plaintiff complains is that to his legal and personal property. See Hagan v. Chambers, 2010 WL 4812973, at *13-15 (M.D. Pa. Nov. 19, 2010), *citing* Wilson v. Schomig, 863 F. Supp. 789, 794–95 (N.D. Ill. 1994) (ruling that absent showing of physical harm, fact that inmate slept on urine and feces-stained mattress in dirty, roach-infested, leaky cell did not state an Eighth Amendment claim).[4]

Even if Plaintiff's assertions were sufficient to satisfy the objective component of the Eighth Amendment analysis, Plaintiff has failed to plead sufficient facts to show that Defendants were deliberately indifferent to a known risk of harm. Although Plaintiff generally alleges that he "continuously informed" Defendants Guyton and Henderson that his toilet was overflowing, he has failed to allege how often his toilet overflowed, how much it overflowed, how long he was exposed to the overflow, when and how often he informed Guyton or Henderson of the problem or precisely what he told them. Indeed, Plaintiff has not alleged that he specifically complained to Guyton or Henderson that he was being exposed to fecal matter or dangerous and unhealthy conditions. Nor did Plaintiff complain of being exposed to unhealthy or dangerous conditions in the Grievance he filed on November 26, 2011, but rather complained only that his property was destroyed. ECF No. 3-1. Plaintiff has therefore failed to assert sufficient facts from which it could be inferred that Guyton or Henderson were aware of facts from which it could be inferred that Plaintiff was at risk of harm. Further, even if Plaintiff had pled such facts, he has not alleged that either Defendant actually drew the inference that Plaintiff was at risk and chose to ignore it. See Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011), *quoting* Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("the official must both be aware of facts from which the

---

[4] Nor does Plaintiff allege any facts to suggest that he was denied the means to clean his cell when the toilet did overflow. In fact, following the only specific incident to which Plaintiff refers, he has alleged that he was provided with a mop in order to clean up his cell.

11

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Plaintiff therefore has failed to plead sufficient facts to suggest that either Guyton or Henderson were deliberately indifferent to a known risk and thus has failed to raise the right to relief above the speculative level. As such, Plaintiff's Eighth Amendment claim is properly dismissed.[5]

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss Plaintiff's Amended Complaint submitted on behalf of Defendants is properly granted.[6] Accordingly, the following Order is entered:

## ORDER

AND NOW, this 2nd day of March, 2015, upon consideration of the Motion to Dismiss the Amended Complaint submitted on behalf of Defendants and Plaintiff's Rebuttal to Motion to

---

[5] Further, to the extent that Plaintiff suggests that deliberate indifference can be found from the fact that Defendant Guyton was assigned to investigate the Grievance in violation of DOC policy, and from the fact that certain findings made by Guyton, and perpetuated by Defendants Folino, Shawley and Varner, were incorrect or misleading, these assertions do not serve to resurrect Plaintiff's Eighth Amendment claim. As previously discussed, prisoners do not have a constitutional right to prison grievance procedures in the first instance nor a liberty interest protected by the due process clause in the grievance procedures. Fears v. Beard, 532 F. App'x at 81. See Ramos v. Pennsylvania Dep't of Corr., 2006 WL 2129148, at *3 ("contentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit"). Moreover, Plaintiff complains in the Amended Complaint that Defendants engaged in unconstitutional conduct from mid-October until November 18, 2011, when his cell was flooded and his property was allegedly destroyed. Plaintiff's Grievance, however, was not filed until November 26, 2011, or eight days later. As such, the manner in which Plaintiff's Grievance was handled subsequent to the complained of conduct cannot provide the basis for finding that Defendants were deliberately indifferent to a risk of harm stemming from his toilet overflowing.

[6] Although the United States Court of Appeals for the Third Circuit has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so, the Court is not required to allow an amended complaint to be filed where it would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Here, not only has Plaintiff already amended his complaint once but, given the above findings, it appears that Plaintiff is unable to allege sufficient facts that would give rise to a civil rights violation. Hence, allowing him to file another amended complaint would be futile and the Court declines to do so.

12

Dismiss Amended Complaint, IT IS HEREBY ORDERED that Defendants' Motion, ECF No. 22, is GRANTED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

/s/ Maureen P. Kelly  
MAUREEN P. KELLY  
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: Ted Ridgeway  
    FS-3189  
    SCI Albion  
    10745, Route 18  
    Albion, PA 16475-0001

    All counsel of record by Electronic Filing